UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

SAZA, INC., et al,

Plaintiffs,

v.                                                      Action No. 3:11-CV-363

SHASHIKANT J. ZOTA et al,

Defendants.

## MEMORANDUM OPINION

THIS MATTER is before the Court on two motions: (1) Plaintiffs' Motion for Judgment on

the Settlement, filed by Saza, Inc., Shahida Khanom, and Jahangir Chowdhury ("Plaintiffs' Motion")

(ECF No. 50); and (2) Defendant William Jones' Motion to Enforce Settlement Agreement

("Defendant Jones' Motion") (ECF No. 58) (collectively, "Motions"). Both Motions were fully

briefed and a hearing on the Motions was held on January 17, 2012. At the conclusion of the

hearing, the Court DENIED Plaintiffs' Motion and took Defendant Jones' Motion under

advisement. The Court now GRANTS Defendant Jones' Motion and ENFORCES the settlement

agreement between Plaintiffs and Jones. This Memorandum Opinion sets forth the rationale for the

Court's decision.

## I.      BACKGROUND

Plaintiffs Khanom and Chowdhury are, respectively, shareholder and employee of Plaintiff

Saza. (Am. Compl. ¶ 2-3, ECF No. 25.) Defendants Mahbob Rahman and Anamul Hoque are

former shareholders of Saza. (*Id.* ¶ 7-8.) On June 2, 2011, Plaintiffs Saza, Khanom, and Chowdhury,

commenced this action asserting various federal and state claims against Defendants Shashikant

Zota, Zotas Petroleums Corporation ("ZP Corp."), Zota Petroleums, LLC ("ZP LLC"),[1] Rahman, and Hoque. Specifically, Plaintiffs sued Defendants on the basis of fraud and breach of contract arising from the sale and purchase of two corporations—Saza and Stop & Go, Inc. ("Stop & Go"). On December 2, 2010, Plaintiff Khanom sold all her shares in Saza and Stop & Go to Defendants Rahman and Hoque, who in turn sold one hundred percent of Saza's shares to ZP Corp. After the purchase, Plaintiffs Chowdhury and Khanom paid $100,000 in an attempt to purchase Saza back from ZP Corp. ZP Corp did not sell Saza back to Plaintiffs and ZP Corp. remains the one hundred percent owner of Saza. Plaintiffs seek to recover damages for the sale of Khanom's shares to Rahman and Hoque and also from Zota and ZP Corp. for the amounts paid to him to repurchase Saza. On August 1, 2011, Plaintiffs filed an Amended Complaint, asserting attorney malpractice claims against William D. Jones. (Am. Compl., ECF No. 25.) Jones is a licensed attorney who acted as counsel to Plaintiffs (Saza, Khanom, and Chowdhury), Defendants (Zota, ZP Corp., ZP LLC, Rahman, and Hoque), and Stop & Go, Inc. in the underlying transactions. (Am. Compl. ¶ 9.)

The present Motions are not about the merits of these claims. Rather, the Motions arise out of the parties' efforts to settle the action. Specifically, in Plaintiffs' Motion, they assert that Plaintiffs and Defendants Rahman, Hoque, Zota, and ZP Corp. had reached a binding settlement agreement and request that this Court enforce that agreement. Defendants Rahman and Hoque contend, however, that no such agreement exists. Also, in Defendant Jones' Motion, he asserts that he reached a separate binding agreement with Plaintiffs which was not contingent on the resolution of the entire case. Plaintiffs contend otherwise.

Before the Court addresses the merits of each motion, it is necessary to recount the parties' communications to each other and the Court during the course of the settlement negotiations. On

---

[1] ZP LLC filed for Chapter 11 bankruptcy on August 7, 2011. (*See* Pls.' Mem. 2 n.1.) Hence, the suit against it is stayed. *See* 11 U.S.C. § 362(a).

July 21, 2011, before the Amended Complaint was filed, the Court ordered the parties to participate in mediation. A settlement conference took place on October 11, 2011, before United States Magistrate Judge Dohnal.

**A. Facts Relevant to Plaintiffs' Motion For Judgment On The Settlement**

Following the settlement conference, the parties continued to correspond via emails and telephone conference. (Pls.' Mem. 2.) On October 12, 2011, under the belief that the parties (Plaintiffs and Defendants Rahman, Hoque, Zota, and ZP Corp.) had settled, Plaintiffs' counsel sent an email outlining several terms of the settlement to the Magistrate Judge, Zota, and counsel for Rahman and Hoque. Several email correspondence followed after which counsel for Rahman and Hoque responded that he needed to get his clients' approval to the terms outlined. On that same day, Plaintiffs' counsel acknowledged that the parties did not have a settlement.[2]

On October 14, 2011, counsel for Rahman and Hoque sent an email to Plaintiffs' counsel stating the following: "Subject to full execution of a settlement agreement and release, my clients agree to the basic proposal outlined below." (Pls.' Mem. Ex. 1; Defs.' Opp'n Ex. 3.) Later that day, counsel for Rahman and Hoque sent an email to the Magistrate Judge stating: "My clients . . . have reached a settlement with the plaintiffs, which is subject to the execution of a settlement agreement and release by these parties." (Pls.' Mem. Ex. 2; Defs.' Opp'n Ex. 4.) Following this email, the Magistrate Judge informed the Court that the parties had reached a settlement. Consequently, the trial dates and the scheduled hearing for Defendants Rahman and Hoque's pending motion to dismiss were taken off the Court's calendar. Also, scheduled depositions were cancelled. (Pls.' Mem. 2.)

---

[2] Specifically, Plaintiffs' counsel sent an email to Magistrate Judge, counsel for Defendants Rahman and Hoque, Jones' counsel, and Defendant Zota stating the following: "Apparently, I have jumped the gun and we do not have a settlement."(Defs.' Opp'n Ex. 2.)

Plaintiffs' counsel and counsel for Defendants Rahman and Hoque continued to correspond via email. On October 27, 2011, counsel for Defendants Rahman and Hoque informed Plaintiffs that Saza, Inc. was subject to an uncertain amount of unpaid tax liability and consequently refused to sign the settlement agreement drafted by their own counsel.[3] (Pls.' Mem. 3, Ex. 7.) There was also an issue about an outstanding balance owed by Saza to United Capital. (Defs.' Opp'n 4, Ex. 6.) According to Defendants Rahman and Hoque, they sought but received no assurance from Plaintiffs, Zota, and ZP Corp. regarding the unpaid liabilities. The tax issue was brought to the Magistrate Judge's attention. On or about November 2, 2011, the Magistrate Judge informed the parties that the tax liability issue could be put to rest if Plaintiffs provided a receipt showing the tax payments up until October 2011. (Pls.' Mem. 3, Ex. 8.)

By November 3, 2011, the parties resumed discussions on finalizing the written settlement agreement. (*See* Pls.' Mem. Ex. 8.) On November 7, 2011, counsel for Defendants Rahman and Hoque sent the other parties the revised settlement agreement and informed them that he advised his clients to sign the agreement and he was awaiting his client's response. (Pls.' Mem. Ex. 9, 9a.) Also on November 7, 2011, counsel for Defendants Rahman and Hoque contacted the Court to reschedule the cancelled hearing for their pending motion to dismiss.

On November 8, 2011, counsel for Defendants Rahman and Hoque informed the parties that his clients had concerns about the pending sale of the Saza store lease, in the auction of assets following the ZP LLC bankruptcy. On November 9, 2011, counsel for Defendants Rahman and Hoque informed Plaintiffs that his clients would not sign the settlement agreement until the ZP LLC auction occurred. (Pls.' Mem. 4, Ex. 12.) In another email, Defendants Rahman and Hoque stated

---

[3] The draft settlement agreement includes two modifications made by Plaintiffs' counsel. The first modification clarified that ZP LLC was not a party to the agreement because of its Chapter 11 status. The second modification included language that Zota would simultaneously assign a note with the execution of the draft agreement.

that "[f]rom the beginning, 'a material condition of Defendants' willingness to purchase Saza, Inc., was the right to take immediate possession of the [s]tore upon settlement.'" (Defs.' Opp'n 6.)

Also on November 9th, counsel for Defendants Rahman and Hoque asserted that his client's signatures were a condition precedent to the enforceability of the settlement agreement. (Pls.' Mem. 4, Ex. 13.) On November 15, 2011, the ZP LLC auction was held and the lease for the Saza store was purchased by another entity. Consequently, Rahman and Hoque refused to sign the agreement because they were uncertain of Saza's continuity on the premises. As of November 15, 2011, Defendants Zota and Zota P.C. were prepared to sign the settlement agreement. (Pls.' Mem. 4, Ex. 15.)

On November 21, 2011, Plaintiffs filed a Motion for Judgment on the Settlement. (ECF No. 50.) In their motion, Plaintiffs allege that although the parties entered into a settlement agreement on October 14, 2011, Defendants Rahman and Hoque repudiated the settlement agreement and refused to sign it. (Pls.' Mot. ¶ 3.) Defendants Rahman and Hoque filed an opposition to Plaintiffs' Motion. (ECF No. 55.) They argue that there was no enforceable agreement and the email correspondence detailing out the terms of an agreement was always subject to the full execution of a written agreement. Plaintiffs filed a reply to Defendants Rahman and Hoque's opposition. (ECF No. 71.) Defendants Zota and ZP Corp. did not file a response to Plaintiffs' Motion.

## B. Facts relevant to Defendant Jones' Motion to Enforce Settlement Agreement

During the settlement conference on October 11, 2011, Plaintiffs and Jones reached an agreement under which a certain amount of money would be exchanged for a release of claims. A memorandum of understanding ("MOU") was drawn up by the Magistrate Judge and signed by Jones, his counsel, and his carrier. According to testimony at the hearing, during the settlement conference, Defendant Jones and Plaintiffs were located in separate rooms, and the Magistrate Judge

walked back and forth with the proposed terms of settlement. Jones states that after he, his counsel, and his carrier signed the MOU, they were advised they could leave.

The Magistrate Judge gave the MOU to Plaintiffs' counsel. The next morning, on October 12, 2011, Plaintiffs' counsel sent an email to Jones' counsel stating: "I have your MOU from yesterday and have not shared the terms with any of the other parties. Once we have one in place for the remainder of the dispute – this morning, I hope – I will forward yours with signatures back to [the Magistrate Judge]." (Jones' Mem. Ex. A.) Later that morning, Plaintiffs' counsel sent another email to Jones' counsel informing him that the Magistrate Judge suggested that there was no need for an MOU between Plaintiffs and the other Defendants. Plaintiffs' counsel then told Jones' counsel that he believed they could also proceed without the MOU and asked Jones' counsel to draft a settlement agreement.

Later that day, Plaintiffs' counsel informed Jones' counsel there was no settlement between Plaintiffs and the other Defendants, and communicated that depositions for all the parties were being rescheduled. Jones' counsel responded that he was under the impression that Jones and Plaintiffs had settled notwithstanding Plaintiffs claims with the other Defendants. Plaintiffs' counsel replied that "the settlement with Jones was contingent on everything resolving." (Jones' Mem. Ex. F.) Jones' counsel did not agree and sent an email conveying his disagreement to Plaintiffs' counsel. Plaintiffs' counsel responded the reason he held on to the MOU was because they believed the resolution of their claims against Jones was contingent upon the resolution of the claims against the other Defendants.

This issue of contingency was brought to the Magistrate Judge's attention via a telephone conference on October 13, 2011. The parties' account of the conversation differs substantially. Plaintiffs allege that during that call, the Magistrate Judge said that if there was an issue about the contingency of the agreement, Jones could withdraw his offer to settle. Plaintiffs claim that rather

than withdraw the offer, Jones kept the offer open until the following Monday to see if the rest of the case would settle. On the other hand, Jones contends that during the call, he insisted that the settlement between Jones and Plaintiffs was binding and final (as opposed to merely an offer), but "agreed to hold the matter in abeyance to see whether the dispute might be made moot by a reconciliation of the settlement between plaintiffs and [the other Defendants]." (Jones' Reply 4.)

On October 14, 2012, Plaintiffs' counsel informed Jones' counsel that they had reached a settlement with the other Defendants. Plaintiffs' counsel also requested that Jones' counsel send him a draft of the settlement agreement between Plaintiffs and Jones. On October 21, 2011, Jones' counsel sent the draft settlement agreement to Plaintiffs' counsel. Plaintiffs' counsel responded: "That looks okay. I'll have [Plaintiffs] here to sign on Monday." (Jones' Mem. Ex. K.) The parties continued to correspond via emails regarding the payment of the settlement amount and Plaintiffs' counsel sent a completed W-9 tax form to Jones' counsel. (*See* Jones' Mem. Ex. M.)

On November 2, 2011, following a breakdown in the settlement negotiations with the remaining Defendants, Plaintiffs' counsel sent an email to Jones' counsel informing him of rescheduled depositions for Rahman and Hoque and inquiring about Jones' availability for a deposition. (Jones' Mem. Ex. N.) Jones' counsel responded that Plaintiffs and Jones had settled all matters between them since the settlement conference, or in the alternative, since October 14th. Jones' counsel also informed Plaintiffs that their settlement check was processed. Jones also asserted that he would not participate in depositions or discovery. (Jones' Mem. Ex. O.) Plaintiffs' counsel responded that they were scheduling depositions because the settlement between the other Defendants had unraveled and because a dismissal order was not in place in the suit. (Jones' Mem. Ex. P.) The parties sent additional emails back and forth contending the contingency of the settlement agreement.

On December 20, 2011, Defendant Jones filed Motion to Enforce Settlement Agreement. (ECF No. 58.) In his motion, Jones argues that Plaintiffs repudiated the settlement agreement between Plaintiffs and Jones. Plaintiffs filed an opposition asserting that the settlement agreement between Jones and Plaintiffs was always contingent upon the resolution of other pending claims against the other Defendants. (Pls.' Mem. Opp'n Def. Jones' Mot. (Pls.' Opp'n") 1, ECF No. 68.)

Both Motions are addressed in turn.

## II.  LEGAL STANDARD

Federal district courts have the "inherent authority to enforce a settlement agreement" in a case pending before it. *Petty v. Timken Corp.*, 849 F.2d 130, 132 (4th Cir. 1988). As a threshold matter, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 as a result of the claims under the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 *et seq.*, and the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* This Court also has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the other state claims and counterclaims asserted in this action. Hence, the Court applies federal common law and Virginia's contracts principles, where appropriate, to determine the formation and enforceability of any settlement agreement between the parties. *Auer v. Kawasaki Motors Corp.*, 830 F.2d 535, 538 (4th Cir. 1987); *Gamewell Mfg., Inc. v. HVAC Supply, Inc.*, 715 F.2d 112, 115-16 (4th Cir. 1983).

"A settlement agreement is a matter of contract, and without a meeting of the minds as to all material terms, there can be no enforceable settlement agreement as a matter of law." *Intersections, Inc. v. Loomis*, No. 1:09-CV-597, 2010 U.S. Dist. LEXIS 118080, at *7 (E.D. Va. Nov. 3, 2010). Essentially, a district court must conclude that an agreement has been reached on all the material terms, otherwise, the purported agreement is unenforceable. *Ozyagcila v. Davis*, 701 F.2d 306, 308 (4th Cir. 1983).

"Ultimate resolution of the question whether there has been a binding settlement involves a determination of the parties' intention, as objectively manifested." *Snyder-Falkinham v. Stockburger*, 249 Va. 376, 381 (1995). The party seeking to enforce the settlement agreement has the burden of proving the existence and the terms of the agreement. *Bralley v. Carey*, No. 3:10-CV-138, 2010 U.S. Dist. LEXIS 120164, at *5 (E.D. Va. Nov. 12, 2010). "Absent agreement, a party may demand and receive full judicial process, including a trial, for the resolution of legitimate disputes." *Hensley v. Alcon Labs.*, 277 F.3d 535, 540 (4th Cir. 2002).

## III.   DISCUSSION

### A.  Plaintiffs' Motion For Judgment On The Settlement

Plaintiffs filed this Motion for Judgment on the Settlement contending that an enforceable agreement exists between the parties and requesting that the Court enforce the agreement. Conversely, Defendants [4] argue that Plaintiffs filed this motion in an attempt to "salvage a failed settlement" where no enforceable agreement exists between the parties. (Defs.' Opp'n 1.)

The parties' intentions are essential to the determination of the purpose of a written document. *Dunkin' Donuts, Inc. v. Lavani*, 1996 U.S. App. LEXIS 11870, at *7 (4th Cir. May 24, 1996). If the parties contemplate the use of a written document to memorialize the terms of an agreement (either verbal or in another writing), then the written document is not a prerequisite to the formation of a contract. *Id.* at *7-8; *see also Snyder-Falkinham*, 249 Va. at 385 (asserting that if "the parties are fully agreed upon the terms of the settlement and intend to be bound thereby, 'the mere fact that a later formal writing is contemplated will not vitiate the agreement.'" (citation omitted)). If, however, the parties intend to be bound by the written agreement, then the execution of the written agreement is a prerequisite to formation of a contract. *Dunkin' Donuts*, 1996 U.S. App. LEXIS,  at *7;

---

[4] For purposes of this section, "Defendants" refers only to Rahman and Hoque because Defendants Zota, ZP Corp., and Jones did not respond to Plaintiffs' Motion.

*see also Golding v. Floyd*, 261 Va. 190, 193 (2001) (stating that "where you have a proposal or agreement made in writing expressed to be subject to a formal contract being prepared, it means what it says; it is subject to and dependent upon a formal contract being prepared.").

The latter rule is applicable to this case and the Court finds that no enforceable settlement agreement exists between the parties. It is undisputed that the parties agreed to several terms of the settlement. This is evinced by Defendants' counsel correspondence with the Court[5] and the inclusion of those terms in the draft settlement agreement. However, this agreement to the several terms has always been subject to one condition—"full execution of the settlement agreement and release." This language was inserted by Defendants' counsel in the emails to Plaintiffs' counsel and to the Court, and Plaintiffs did not object to it. By inserting this "subject to" clause, Defendants Rahman and Hoque did not intend to be bound until a written document was fully executed. This "subject to" term imposed a condition precedent to the existence or formation of a binding settlement agreement between the parties. In addition, the draft settlement agreement specifically includes an effectiveness clause which states that the "Agreement shall become effective immediately following execution by the Parties." (Defs.' Opp'n Ex. 5.) Because the written settlement agreement was never fully executed, it is not binding and there is no enforceable settlement agreement between the parties.

Plaintiffs rely on the prevention doctrine to assert that because Defendants prohibited the full execution of the written settlement agreement, Defendants may not now complain about the document's lack of signatures. Plaintiffs' reliance is misplaced. The prevention doctrine applies to a condition precedent to performance under a binding existing contract and not to a condition precedent to formation of a contract. *See e.g. Moore Bros. Co. v. Brown & Root, Inc.*, 207 F.3d 717, 725

---

[5] The October 14th email to the Court from Defendants' counsel states, in relevant part: "I just received word from my clients. Subject to full execution of a settlement agreement and release, my clients agree to the basic proposal outlined below." (Pls.' Mem. Ex. 2; Defs.' Opp'n Ex. 4.)

(4th Cir. 2000) ("The prevention doctrine is a generally recognized principle of contract law according to which if a promisor prevents or hinders fulfillment of a condition to his *performance*, the condition may be waived or excused." (emphasis added)).

In *Moore Bros. Co. v. Brown & Root, Inc.*, an enforceable construction contract already existed between the general contractor and the subcontractor. That construction contract contained a "pay when paid" condition precedent clause under which the general contractor would pay the subcontractor only when the general contractor was paid by the owner. *Id.* The project was financed by lenders who insisted on a high degree of certainty in asserting the total project costs. Early drafts of the prime contract between the owner and general contractor contained specific designs, but the owner and general contractor decided not to include the designs in their final agreement because it would warrant additional payment. *Id.* Instead, the owner and general contractor made a side agreement containing these designs. *Id.* Subsequently, the general contractor performed the additional work but the owner's lenders were not aware of the need for additional financing for the project. *Id.* at 721. As a result, the owner did not have the additional funds to pay the general contractor for the additional work. *Id.* The general contractor was not paid by the owner and consequently argued that it had no obligation to pay the subcontractor. *Id.* The Fourth Circuit held that the general contractor contributed to the nonoccurrence of the condition precedent and the prevention doctrine applied to waive the performance of that condition. *Id.* at 725-726. Therefore, the general contractor was liable to the subcontractor for payment of the additional work. *Id.* at 726.

Unlike *Moore*, the condition precedent in this case is to formation of contract, thus, the prevention doctrine does not apply. The agreement by Defendants to certain terms of a settlement was subject to the full execution of a written agreement. Because the prevention doctrine does not apply, Defendants' refusal to sign the written agreement is not a waiver of their right not to be

bound in the absence of a written agreement. The written settlement agreement was not fully executed, and as a result, the purported settlement agreement is unenforceable.

Although the "law favors compromise and settlement of disputed claims," *Snyder-Falkinham*, 249 Va. at 381 (1995) (citation omitted), the Court has only the power to enforce an agreement if there is an agreement on all the material terms. *Ozyagcila*, 701 F.2d at 308. There is no complete, binding agreement between Plaintiffs and Defendants on all the material terms, therefore, the Court DENIES Plaintiffs' Motion.

## B. Defendant Jones' Motion to Enforce Settlement Agreement

There are two issues raised in Jones' Motion: (1) whether Plaintiffs and Jones entered into a binding settlement agreement; and (2) if so, whether that agreement was conditioned on the resolution of the entire case.

On the first issue, Jones contends that at the settlement conference, the parties reached a binding settlement. On the other hand, Plaintiffs contend that the parties did not reach a settlement agreement during the settlement conference; rather, Jones made an offer to Plaintiffs, one that Plaintiffs had not yet accepted. The Court finds that the objective manifestations and the subsequent acts of the parties confirm that the parties reached an agreement (the exchange of a specified amount of money and a release of claims) at the settlement conference and intended to be bound by the terms which were later embodied in the MOU and also in the drafted settlement agreement. *See Protherapy Assocs., LLC v. AFS of Bastian, Inc.*, No. 6:10-CV-0017, 2010 U.S. Dist. LEXIS 67603, at *5-6 (W.D. Va., July 7, 2010) (stating that "the subsequent acts of the parties can be instructive as to whether the parties intended to be bound by their agreement.") This is evident from the fact that on the morning after the settlement conference, Plaintiffs' counsel sent an email to Jones' counsel where he acknowledged his possession of the MOU between Plaintiffs and Jones and stated that he would sign and send it to the Magistrate Judge. Plaintiffs' counsel did not contest any of the terms of

12

the MOU. In addition, although issues about the contingency of the agreement were raised in the subsequent email communications between the attorneys, the material terms (monetary award and release) of the settlement agreement remained completely unchanged. At no point during or after the settlement conference did either party attempt to renegotiate the amount of money or the release of claims that they had settled for.

More importantly, after October 14th, the parties acted as though an agreement existed between them. For instance, Jones sent a draft settlement agreement to Plaintiffs' counsel and Plaintiffs' counsel approved the agreement with no changes. Also, upon Defendant Jones' request, Plaintiffs sent Defendant Jones a completed W-9 tax form, a form used to report taxable income. All these actions indicate, and the Court concludes, that an agreement existed between Plaintiffs' and Jones.

The second issue is critical—whether the agreement between Plaintiffs and Defendant Jones was contingent on an agreement between Plaintiffs and the remaining Defendants (Rahman, Hoque, Zota, and ZP Corp.). For the reasons that follow, the Court finds that the settlement agreement between Plaintiffs and Defendant Jones was not contingent on the existence of a settlement agreement between Plaintiffs and the remaining Defendants. First, there is no credible evidence in the record to support Plaintiffs' contention that the contingency of the settlement was communicated to Jones at any time before or during the settlement conference. Jones states that he (through his counsel) communicated only once to Plaintiffs' counsel over the phone and during that conversation, there was no mention of settlement or negotiations. Rather, the purpose of that call was to bring Defendant Jones' counsel up to speed after Jones was joined to the action pursuant to the Amended Complaint. The Court finds this testimony credible and finds that in the absence of anything on the record even remotely suggesting the contingency of a proposed settlement between Plaintiffs and Jones, the agreement was not contingent.

Instead, the Court concludes that contingency is a new term—one that was not part of the settlement agreement between Plaintiffs and Jones—which was superimposed by Plaintiffs in light of the inexistence of an agreement between Plaintiffs and the remaining Defendants. The MOU between Plaintiffs and Jones did not contain any language suggesting that the agreement between Plaintiffs and Jones was conditioned on the resolution of the entire case. From the record, the Court finds that the issue of contingency was first raised on October 12th, a day after the settlement conference, and on the same day Plaintiffs' acknowledged that there was no agreement between Plaintiffs and the other Defendants. Consequently, the contingency term is a new term and not part of the settlement agreement between Plaintiffs and Jones. Because Jones did not accept this new term, it is not part of the settlement agreement.

Moreover, the draft settlement agreement which Plaintiffs' counsel later approved did not contain a contingency clause. Plaintiffs could have insisted on the addition of a contingency clause, but they did not.  In addition, Plaintiffs continued to act as if there was a binding agreement between Plaintiffs and Jones, independent of the situation between Plaintiffs and the other Defendants. For instance, on October 25, 2011, Plaintiffs (through their counsel) sent Defendant Jones a completed W-9 tax form upon Defendant Jones' request; at this same time, the negotiations between Plaintiffs and Defendants were still ongoing and there was no executed settlement agreement between the Plaintiffs and the remaining Defendants. Because the Court finds that Plaintiffs and Jones entered into a binding agreement to exchange a certain amount of money for the release of claims, and that agreement was not contingent on any other occurrence, the Court GRANTS Defendant Jones' Motion.

## IV.    CONCLUSION

Several factors distinguish the Court's holding on Plaintiffs' Motion from Defendant Jones' Motion. In the former, the terms proposed by Plaintiffs' counsel in the email were an offer. In

acknowledging the offer, Defendants Rahman and Hoque added a new term—the "subject to" language—which necessary contemplated that the agreement between Plaintiffs and Rahman and Hoque would be binding only upon the full execution of a written document. This "subject to" language was a new term that Plaintiffs did not object to. In Defendant Jones' Motion, on the other hand, Plaintiffs and Jones already had an existing agreement. Plaintiffs added a new term—contingency—which was rejected by Defendant Jones. Hence, the contingency provision is not part of the agreement between Plaintiffs and Jones.

Another factor is that in Plaintiffs' Motion, after the settlement conference and even after the settlement agreement was drafted, Plaintiffs and Defendants Rahman, Hoque, Zota and ZP Corp. continued to negotiate material terms of the agreement, such as tax liabilities and debt obligations. In Defendant Jones' Motion, however, the material terms of the agreement reached at the settlement conference, and embodied in the written settlement agreement has remained unchanged.

For these reasons, and all the reasons stated above, the Court DENIES Plaintiffs' Motion and GRANTS Defendant Jones' Motion. The Court ENFORCES the settlement agreement between Plaintiffs and Defendant Jones.

Let the Clerk send a copy of this Memorandum Opinion to all parties of record.

An appropriate Order will issue.

_____/s/_____
James R. Spencer
United States District Judge

Entered this ___16th_____ day of February 2012.